Good morning, Your Honor, and may it please the Court, Barbara Smith on behalf of Appellant Christopher Sandknop. Qualified immunity famously protects, quote, all but the plainly incompetent and those who knowingly violate the law. It's an important doctrine that gives government officials breathing room to ensure that when they perform their government functions, they can do so without the fear that every routine, well-meaning mistake will lead to civil liability under 1983. That said, the facts of this case on the basis of the pro se complaint filed by my client make clear that it's outside the bounds of qualified immunity. And that's because the government officials here didn't simply make a mistake or an error of judgment. Rather, they knowingly and intentionally misled a sentencing judge into imposing a sentence that plainly violated Missouri law. The government officials here did so notwithstanding that the Missouri Court of Appeals had expressly told them a matter of days or weeks earlier not to do exactly what it is they did in this case. The petitioner in SOM, who was granted a writ of mandamus by the Missouri Court of Appeals, alleged that after his sentence under Statute 217, which is a diversionary provision that allows for substance abuse treatment completed, that the sentencing judge either had to execute his sentence as originally imposed or grant him probation. The Missouri- SOM didn't have the same problem we have here, right? SOM didn't involve 577.023. That's correct, Your Honor, although the original sentencing order in this case didn't involve the 577 statute either. My client was sentenced under 217, and having been sentenced under 217, the sentencing judge only had one of two options, release him on probation or execute the original sentence. The government attempts to argue that because my client could have been sentenced under a different provision, statutory provision, that therefore there's some sort of harmless error in the illegal sentence that was imposed. And however broad the bounds of qualified immunity, they certainly don't cover situations like this, where government officials intentionally mislead sentencing judges into entering a sentence in violation of the plain terms of the statute under which the defendant is sentenced, 217, and the admonitions of the Missouri Appellate Court that they not make those sorts of misrepresentations. Well, did 577.023 apply here? Ultimately, the sentencing judge, in the days before he released my client, reissued the sentencing order and applied 577 retroactively. But that says nothing about the eight months during which my client was confined under a sentencing order that relied only on 217. But I'm not asking whether he did it as a factual matter. I'm just saying as a legal 577.023, are you saying there's some discretion? I don't think anyone is arguing he was required to apply 577. The Missouri Supreme Court has since looked at the same conflict in the statute that we're addressing here, which is what do you do when you have a chronic offender who's eligible under 577 for the two-year alternative mandatory minimum, but is also eligible for the diversionary treatment program under 217. And while the court has now answered that question, it hadn't done so at the time my client was sentenced. What did they say the answer is? That if you complete your sentencing under 217, you complete the treatment program, you then could be continued to be confined on the facts of an original sentencing order that included the 577 as a basis for sentencing. So if in the original sentencing order you say I'm sentencing you to treatment and also as a chronic offender, you can be held for two years, this is the Hodges versus Ossel case, then as a result of that, when you complete your treatment program, you can continue to be held for up to 24 months. But again, those are not the facts of this case and that certainly wasn't the law at the time my client was unlawfully detained for an additional eight months. Well, arguably it was the law, it just hadn't been announced yet by the Supreme Court, but the statutes were in place. Well, respectfully, Your Honor, I don't think this is a case where either a sentencing judge or a probationary officer sort of made a mistake or was confused about the nature of the law and as a result of that, there was an unlawful detention. Rather, the allegations here are that the corrections officials intentionally misled the judge in direct violation of an order from the Missouri Court of Appeals that they not do so. And whatever sort of qualified immunity would cover a good faith mistake, it doesn't cover a knowing violation. Are there any cases where there's been an indication where the judge has been misled by someone on the law, which gives rise to some liability as opposed to misleading the judge on the facts? I mean, generally speaking, the way that we look at cases, trial judges are learned in the law and they ought to figure out what the law is. And lawyers stand up and misrepresent the law every single day in a trial courtroom. I've been there for 26 years and it's the judge's job to figure out what the law is. And we've held people liable when they've made factual misrepresentations. I'm wondering, are there any cases where there's been people held responsible for a misleading on the law outside of a disciplinary context? Well, if I may, Your Honor, the problem here isn't the misleading on the law per se. It's the ignoring of the appellate court's order that the probation officials not do that. So I think that, you know... Is there a restraining order of some type actually issued? Or is it just a footnote in the case? Well, it's a very clear directive in footnote four of the Salm case that the Department of Corrections not tell sentencing judges that they can retain jurisdiction after the completion of a treatment program and delay a probationary sentence. It's very clear in footnote four. The opinion itself says the sentencing judge relied on these representations by the Department of Corrections. And footnote four directs the Department of Corrections not to make those misrepresentations in the future. Of course, there wasn't an injunctive relief claim because the posture of that case was a petition for a writ of mandamus. So, you know, I think it's not surprising that there wasn't an injunctive relief sui sponte granted by the appellate court. But I think when an appellate court says to government officials, you may not do X, that it is a cognizable 1983 claim if those same government officials subsequently do X. So although qualified immunity would protect confusion about the law, would protect even in some contexts, active misleading about the factual basis for, you know, certain court orders, it doesn't protect government officials who intentionally ignore court orders. Yeah, I understand that. I'm still trying to, though, figure out how your client was harmed if this chronic offender statute applies. I'm still trying to understand whether you think that was a discretionary matter or whether that applies as a matter of law. Because the statute says, no offender shall be eligible until he served two years. So if your man was a chronic offender, then it seems to me, if that's right, the judge would have had no authority to release him earlier, no matter what the probation officer said. I think about the constitutional right slightly differently, Your Honor. I think there's nothing more fundamental than the right to only be sentenced pursuant to validly issued orders. There's no opportunity to be sentenced under a particular statute and then have a court go in after the fact and say, well, notwithstanding that the sentence we actually sentenced you under was invalid, there's a sort of harmless error to having done that because we could have relied on this other sentence. I mean, whatever the 14th Amendment says about due process, it certainly says you're entitled to be sentenced under valid sentencing provisions and you're entitled not to have government officials mislead sentencing judges into relying on provision X. Is there any doubt that he was a chronic offender? No, he wasn't. I don't believe there's any confusion in the record about the fact that he was a chronic offender. And so was the trial court required then by that statute to sentence him pursuant to that statute? I'm not sure if it was an obligation on the part of the sentencing judge to rely on 577. It was an obligation to sentence him under the correct statute. And I'd just like to note that... Were the prior offenses pled in the state court? So this was a sort of collective plea deal that encompassed several outstanding cases in St. Louis County. And I'd just like to point out... So it was all in the record that he had the prior... As part of the negotiated plea. And I'd like to point out that the sentencing judge himself and the prosecutor as well isn't named as a defendant in this case for an important reason, which is the fact that the sentencing judge may have made a mistake in the sentencing order isn't the basis for liability here. The basis for liability here is the prison officials actively misleading the judge. If all we were up here arguing is the sentencing judge should have relied on provision X... How though are they misleading him if all they do is point out that this person was in fact a chronic offender and this statute therefore applies? How is that misleading? Respectfully, those aren't the facts that's pled in the complaint. The facts that's pled in the complaint are that Mr. Jarrett made an ex parte phone call to the judge and said to him, notwithstanding that Psalm says you cannot do this, you have the ability to retain jurisdiction not under 557, but under 213 to essentially delay the effective date of the probationary hearing. And whatever the facts in the record come to demonstrate after discovery has occurred in this case, for purposes of a motion to dismiss, I think we've clearly established that taking that action, that misleading the judge and telling him he could retain jurisdiction under 213 when he plainly cannot, is a violation of my client's constitutional rights that resulted in him being detained for an additional eight months. And there's no ability to go in and ask... Well, hold on. That last point is the one that's in dispute. You say it resulted in him being detained for an additional eight months, but if the judge had not been misled, he would have been required to detain him for the additional eight months under 577. The judge could have retained him under 577. I think he also could have said, because I originally sentenced you under 213, at the conclusion of your treatment program, I'm required to issue you probation or to remand you for the execution of your 10-year sentence. The fact that this confusion in the law was subsequently addressed by the Missouri Supreme Court says nothing about the state of the law at the time this unconstitutional confinement occurred. And if we're in a world where the Missouri Appellate Court has said 213 only gives you two options, at the conclusion of treatment, you release the offender on probation or you remand him for the full execution of his 10-year sentence, and a judge doesn't do that because prison officials actively mislead him into telling him he does not have to, that's a violation of my client's constitutional rights. That's well outside the scope of qualified immunity. It's certainly outside the scope of the absolute immunity that the government argued at trial and on appeal. And I don't think that's surprising. As Judge Erickson mentioned, there are contexts in which 1983 claims are cognizable when, for example, police officers lie for purposes of obtaining an arrest warrant. If a police officer knowingly misleads a judge into issuing a warrant, he can't then rely on the validly issued warrant as a basis for escaping 1983 liability. So too here. If a prison official knows that the Missouri Appellate Court has told me I cannot tell a judge he can retain jurisdiction to extend a sentence by an additional 12 months and he does so anyway, he can't then come in after the fact and say, well, the fact that some other statute would have allowed the judge to do this anyway means that I get a free pass. That's just not, I think, a healthy respect for the role of the Missouri Appellate Courts in interpreting the meaning of sentencing statutes. What if this other statute actually requires you to hold the defendant for the extra eight months? Well, again, Your Honor, then I think we wouldn't have a claim for the fact that the warden held him after the order was issued, but I think we would still have a claim for actively misleading the judge. And of course, the sentencing order here didn't rely on 577. And so I think that that alone gets us sort of past that question at the motion to dismiss stage. I'd like to reserve the remainder of my time for rebuttal. Very well. You may. Mr. Kaplan, we'll hear from you. Would it be permissible for me to raise the microphone a little bit? Sure. Yeah, there's a button on the side. Thank you. You can adjust the microphone, too, so we can hear you. Please let me know if you can't hear. Good morning, Your Honors. I'm Ross Kaplan with the Missouri Attorney General's Office, and I represent Defendant O'Connell and Jarrett, if it pleases the Court. To begin, Appellant has raised a couple of issues that I think are going to need to be addressed. First, what a liberal construction of a pro se complaint means versus doesn't mean, namely that immunities are not ignored just because you liberally construe a complaint. Second, while Plaintiff has continually emphasized Sedexrel, Salm, v. Minmeyer, it's not applicable to this matter. And third, not raised here at oral argument, but in the brief previously, Sanop v. Goldman is not the written mandamus from the Missouri Court of Appeals, is not the smoking gun Plaintiff has asserted that it is. I'd also like to discuss three points that demonstrate that the District Court correctly ruled to dismiss this matter. First, Sanop cannot show a clearly established right. Therefore, defendants are entitled to qualified immunity. Second, Sanop has attempted to create an exception to quasi-judicial absolute immunity that does not exist. And third, Defendant Jarrett, as a parole officer, is entitled to absolute immunity. While Sanop claims that Jarrett contacted the judge, because that was within his role as a parole officer, absolute immunity should apply. Beginning with the liberal construction and the reading of the complaint, Plaintiff complains that the District Court failed to liberally construe his pro se complaint. Otherwise, he asserts, his claims would not have been dismissed. However, Plaintiff fails to acknowledge several issues that led to that dismissal. First, while the pro se complaint is to be liberally construed, the pleadings may not be merely conclusory. Complaint must allege facts, which, if true, state a claim as a matter of law. The court is not bound to accept as true legal conclusions couched as factual allegations. In Plaintiff's complaint, much of the pleadings are either irrelevant to his claim with respect to, and as, or are conclusory in nature. Second, while a claim is plausible if the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged, if an immunity is applicable, the defendant is not liable. This is why absolute immunity, when applicable, defeats the suit at the outset. And finally, a liberal construction does not mean a District Court should only look to the pro se complaint. Other documents embraced by the complaint can be considered, and those other documents provided the District Court with the context that explains what actually happened in this matter. With respect to Salm B. Menmeyer, as a few factual matters, Salm was convicted of the Class C felony of stealing, for which he was sentenced to seven years in prison and placed into the Section 217.362 treatment program. Upon completion of the 12-month program, the Department of Corrections advised the sentencing court that it could retain jurisdiction over Salm for an additional 12 months, which the court ordered. Salm then sought a writ to require the court to either execute his sentence or release him on probation. The appellate court held that the circuit court was not statutorily authorized to retain jurisdiction for a total of 24 months over petitioner upon successful completion of the 12-month program. The sentencing court . . . Yeah, we've read the cases. Okay. Why don't you tell us how they apply to these facts where the allegation is, you know, that the prison officials misled the judge and so forth? Okay. Well, with respect to Salm, a couple of noteworthy points. First, Salm was convicted under a different statute that had nothing to do with a mandatory minimum sentence. That in and of itself ought to completely . . . I think the argument is that Salm, like the defendant here, was sentenced . . . 213 was applicable, right? 213 is applicable, but it is not dispositive as to a matter. Section 217.362, is that the statute you're referring to, the treatment statute? Well, the one I understand that says he's either got to be let go . . . 217.362. Okay. 217.362 is a diversionary treatment program statute for people that are incarcerated that are drug addicts, have chronic problems with respect to alcohol, those sorts of things. What's going on in Salm is that the statute permits the court to retain jurisdiction with respect to those particular matters for up to 24 months. And the issue in Salm was the treatment program was only 12 months long. So upon the successful completion of that program, the court had to do one of the two things and the mistake was the misunderstanding that he still had jurisdiction . . . or excuse me, she still had jurisdiction for an additional 12 months. So it really doesn't have a lot to do with that. It's just once they got to the end of that point, once the program was successfully completed, the judge had to take the next step, either say yes, you can go on parole, or no, we're going to execute the sentence. So that's how the 217 works. It's not as though you were sentenced to that. That's not the infraction that happens. I would note with respect to Salm, and interestingly, in determining whether to execute the sentence or place Salm . . . What I'm interested in, though, is 217 being applicable, Salm says you've got to do one of the two, and at the time, the plaintiff here, there was no 577 sentence. That is correct. In Salm, yes. Okay. So why . . . No, in this case. In this case. No. The record is absolutely clear that he was convicted under 577, and then he was also entered into the treatment program under 217. I'm sorry, but the statement that she made is not correct. Okay. What makes that clear, then? The judgment and sentence. It is . . . Appellant's appendix. You can start on page 27 through . . . Because Ms. Smith made it sound as if 577 was an afterthought. No. I'm sorry. If you look to the record, pages 27 to 29 of Appellant's appendix . . . The judgment should make it clear that that's not the case. I'm not saying that the judgment . . . It's a prefab form, and they check boxes. I'm not saying that mistakes can't be made, because in fact, they were, but he's sentenced under 577 for the chronic drunken driver. He was sentenced to that in addition to four other . . . I think it was four other convictions that were going on at the exact same time. DWI convictions? I think at least one or two of them were. It's not in the record, but the cases themselves are cited to within the sentence. You're saying, page 27 of the appendix, the box is checked that says chronic offender, and chronic offender is circled, and it says 577.023 right under chronic offender. You're saying that is a statement by the court that he's being sentenced as chronic offender? Yes. So the two-year requirement always applied? Yes. And so, therefore what? Therefore . . . 577 is absolutely applicable to this. Yeah. So is this the harmless error point that we were talking about earlier? That even if the judge made a mistake on 277, it doesn't matter? 217, rather, it doesn't matter because . . . I would agree with you . . . 577 required, is that the argument? No. It's the argument. It was certainly the argument that the court was making, and I would agree with you that he was obligated, especially if you look to Hodges v. Azel. The court requires . . . Well, if you're making a different argument, why don't you just lay it out, then? Okay. I'm sorry? You're making a different point than what we were just discussing there? No. I agree with your point. The judge was obligated to do it. The allegations, whether they're legal conclusions or if they're actual well-pled facts, are that in some way, the parole officer tried to trick the judge into doing something that he shouldn't do, and one, it wasn't the case, and two, even if it were the case, there's And three, separate and apart from that, there are three different immunities that are applicable to it, which would prevent him from having a cause of action that could survive a motion to dismiss. Let's say that the trial judge, when he took the plea and accepted this global agreement, nobody had said anything to him. At that point, he was obligated under 577 to require that the defendant serve at least two years. And, in fact, sentenced him to ten. Right. But he had to serve at least two years, right? Under the statute, correct. Under the statute. And this diversion program exists, and that could have, under the way that 217 and 577 worked together, that could have allowed him to do the treatment program, sit to them, be released. Yes. And if the judge knew the law, if the judge did what he was obligated under or she was obligated to do under the law, that's exactly what would have happened. Yes. All right? And so, if the parole or probation officer tricked the judge into doing anything, he's tricking the judge into doing what the judge is legally obligated to do. Yes. But the argument is that he never articulated it as a 577 sentence. He articulated it under 217, and that was wrong. That is Appellant's argument in the briefs. So what about that, that the sentence is only a sentence if it's issued under an order and the order explains the basis for the sentence? Well, if we start with the initial sentence, I would say that the court had jurisdiction, so under quasi-judicial absolute immunity, the prison employees are obligated to follow that sentence, whether it's clear or not. And it shows, one, that he was convicted under 577-023. He was sentenced to 10 years in prison, and he was also supposed to utilize the treatment program. So if you were to look nowhere further than the sentence, then that alone would demonstrate that they were simply complying with the law, or with the judge's order, regardless of if it was actually correctly entered or not. Separate and apart from that, with respect to the... So we're speaking a lot about the record. With respect to the pleadings themselves, there's something that's kind of interesting that's going on, and it's getting a little bit distracted from the arguments that Appellant is trying to make at this point. If you look to the pleadings and the things that are embraced by the pleadings... So originally the court sentenced him to 10 years. He goes into the drug treatment program. The judge, excuse me, Mr. Sandknapp, then alleges that the parole officer contacted the court for whatever reason it might be. Interestingly, the statute under 217 requires the parole officer to contact the court to give an update as to how the treatment program is going. So then, supporting that pleading, if you look to the separate appendix, I think it's page three, it demonstrates that that particular allegation is correct, because it says that the judge then issued an order in March of 2014 saying that he was subject to release in July of 2015. The next pleading that Mr. Sandknapp makes is that the... Excuse me, I'm trying to think this through. The next pleading that he makes is that he was then kept too long, except that what the appellant is arguing is that this coerced or suborned amended order that was issued in July of 2014 did something wrong. In fact, it moved the date up six months for when he was to be released. So on their face, separate and apart from the immunity, separate and apart from whether or not the judge did or did not enter the orders correctly or the sentence correctly, the allegation that something happened is not correct, because as you can see as it traces through from the sentence to the March 2014 order to the amended order that are in the allegations, all that happened was his time kept getting reduced. It wasn't that he was being held any greater length of time. I don't have a lot of time left, so I'm just going to point out one other thing, and that is with respect to Warden O'Connell, there are no pleadings whatsoever with respect to Warden O'Connell other than he did his job, which was to keep an offender in prison. The allegations, the few that there are, are only with respect to Mr. Jarrett, who was the probation and parole supervisor. So there is no case whatsoever with respect to Mr. O'Connell, and frankly, nothing within the pleadings themselves demonstrate to me that there's anything to suggest that there's actually a cognizable claim under 1983. I'd be happy to accept any other questions that you have, otherwise I'll yield the remainder of my time. Very well. Thank you for your argument. Would you care to make rebuttal on this, ma'am? I would. I'd like to clear up this confusion about the nature of the sentence that was issued and why it was wholly improper. The July 2014 amended sentencing order that the judge issued sua sponte, pursuant to the phone call he had ex parte with the probation officials, does not rely on 577. And that's obvious if you look, for example, at the grant of the mandamus writ, page 502. It explains that the trial court's amended order doesn't do what it's required to do under 217, which is either release the defendant or execute his sentence. Instead, the mandamus order explains the judge relied on a wholly different provision, 559, to extend my client's time in prison through December of that year. So the amended order that is the subject of this litigation doesn't rely on 577. And as a result of that, continuing to confine my client until December of 2014 was wholly outside the law and was unconstitutional and only occurred because the probation official in this case misled the judge into issuing that order sua sponte. What page is that amended order in the appendix? The notation of the order in the docket appears at separate appendix, the separate appendix filed by the government at page 2. You'll see an entry next to July 14, 2014. And this actually says the amended order of probation pursuant to 217 reflects a new release date of December 2014. Do we have the actual order in the record? I apologize, Your Honor. I was looking for it while the government was arguing, and I couldn't find it. But I think based on these two citations, both to the Missouri Court of Appeals granting the writ of mandamus and the docket entry as reflected here, it's just it's not, as a matter of fact, that the amended order didn't rely on 577. And because it didn't do that, and because the court was misled into relying on other provisions to continue my client's confinement, his constitutional rights were violated. I'd like to also take the opportunity to address the absolute immunity argument the government made in its briefs and at argument today. I think it would be a vast expansion of the absolute immunity doctrines to hold that probation officials are not liable for actively misleading sentencing judges. I think there are important reasons that we would hold that prosecutors who even commit knowing Brady violations may not be liable under 1983. There are important reasons why we would hold that judges who commit misconduct are still subject to absolute immunity. That all makes sense and is very separate and apart and distinct from the qualified immunity doctrines that routinely apply to police officers, probation officials, and wardens. If there are no further questions, we'd ask the court to reverse. Very well. Thank you for your argument. The case is submitted, and the court will file an opinion in due course.